UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IRISBELSY ANTONIO VALDEZ MOLINA, et al., § § § | |
| Plaintiffs, § § | |
| v. § | Civil Action No. 4:24-cv-00593-O |
| § | |
| JEFF BRADY, et al., § § | |
| Defendants. § | |

## **MEMORANDUM OPINION & ORDER**

Before the Court are Defendant Jeff Brady's Motion to Dismiss (ECF No. 17), Plaintiff's[1] Response (ECF No. 25), and Defendant Jeff Brady's Reply (ECF No. 30). Also before the Court are Defendant Brisie Leon's Motion to Dismiss (ECF No. 21), Plaintiff's Response (ECF No. 27), and Defendant Brisie Leon's Reply (ECF No. 29). Having reviewed the briefing and applicable law, the Court determines that the Motions should be **GRANTED**.

**I.   BACKGROUND[2]**

On June 29, 2022, Fort Worth police responded to a 911 call indicating that Alejandro Molina Cornelio ("Alejandro") was attempting to get into his sister's home where his wife and other family members were located. The caller, presumably one of Alejandro's family members, reported that Alejandro had a gun. There was no report that he discharged the gun. Before officers arrived on the scene, Alejandro fled in his truck. Officers located his truck and attempted a traffic stop, but Alejandro refused to pull over.

---

[1] "Plaintiff" in this Order refers to Irisbelsy Antonio Valdez Molina, who brings this wrongful death action on behalf of her children and this survival action on behalf of her late husband's estate (the collective plaintiffs).
[2] The Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Compl., ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to the Plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

A vehicular pursuit began, as Alejandro drove back toward the house where officers had been dispatched. To prevent Alejandro from returning to his sister's home, officers used their vehicles to set up a blockade in the street. As Alejandro approached the blockade, Fort Worth Police Officer Crawford rammed Alejandro's truck with his own vehicle. This resulted in Alejandro's truck spinning and coming to a stop in the street.

After Alejandro's truck came to a stop, Fort Worth Police Officers Jeff Brady ("Sergeant Brady") and Brisie Leon ("Officer Leon") (collectively, "Defendants") each fired their department-issued firearms at Alejandro, striking him. Defendants were standing behind the protection of a patrol vehicle and not in the pathway of Alejandro's truck when they fired these shots. Alejandro did not reach for his gun, accelerate his vehicle, rev his engine, or turn the tires of his vehicle before Defendants fired. Nor did he verbally threaten officers or attempt to flee or exit his vehicle.

Alejandro died as a result of these gunshots on July 5, 2022. Alejandro's wife, Irisbelsy Antonio Valdez Molina ("Plaintiff"), now files this lawsuit against Sergeant Brady and Officer Leon on behalf of herself, their seven children, and Alejandro's estate. Relevant to this Motion, Plaintiff brings a § 1983 claim against Defendants in their individual capacities for excessive force in violation of the Fourth Amendment. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity, among other reasons.

## II.   LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The

Rule "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy this standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court may not accept legal conclusions as true, but when well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 678–79.

### B. Qualified Immunity

The doctrine of qualified immunity protects government officials sued under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* This

doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Deciding whether an official is entitled to qualified immunity requires a court to apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first prong of the *Saucier* analysis asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Id.* at 201. The second prong asks whether that right was clearly established at the time of the government official's alleged misconduct. *Id.* "The *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

"To surmount [the qualified immunity] barrier at the motion to dismiss stage, the plaintiff[] must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm alleged and that defeat a qualified immunity defense with equal specificity." *Torns v. City of Jackson*, 622 Fed. App'x 414, 416 (5th Cir. 2015) (cleaned up). Once an officer "raises the defense of qualified immunity, the plaintiff bears the burden of showing the defense does not apply." *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020).

### C. Fourth Amendment Excessive Force

"To establish a claim of excessive force under the Fourth Amendment, [a plaintiff] must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (citation and quotation marks omitted).

The test of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

4

or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville*, 567 F.3d at 167 (citations omitted). "However, officers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Id.* (internal quotation marks and citation omitted).

Claims that law enforcement unreasonably utilized deadly force are treated as a special subset of excessive force claims. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998). "[G]uns represent the paradigmatic example of 'deadly force.'" *Id.* "[I]n *Garner*, the Supreme Court held that police use of 'deadly force' violates the Fourth Amendment unless 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others[.]'" *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

## III. ANALYSIS

### A. Qualified Immunity: Constitutional Violation

Plaintiff brings a § 1983 claim against Defendants in their individual capacities for excessive force in violation of the Fourth Amendment.[3] Plaintiff argues that the facts do not establish that Alejandro was "a threat of serious physical harm," because when Defendants fired at Alejandro, (1) "he had not reached for a weapon or made any movements that could have been believed to be him reaching for a weapon;" (2) he "had not accelerated his vehicle, revved his engine to indicate it was going to move, or even turn[ed] the tires of his stationary vehicle;" and (3) Defendants "were standing safely behind a police SUV."[4] *Id.* Defendants counter that their

---

[3] Pls.' Original Compl. ¶¶ 48–75, ECF No. 1. The Court does not evaluate Defendants' conduct separately because at this stage, there are no facts separating their conduct.
[4] Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 13–14, ECF No. 25.

use of deadly force was justified, because all the preceding circumstances informed their perception that Alejandro was armed and dangerous.[5]

The Court agrees with Defendants. Applying the three *Graham* factors, it is plausible that Defendants had "probable cause to believe that [Alejandro] pose[d] a threat of serious physical harm." *Garner*, 471 U.S. at 11. As to the first *Graham* factor, "the severity of the crime at issue," Alejandro threatened to break into his family's home with a gun and led police on a chase that was sufficiently serious to involve at least several officers and a blockade.[6] 490 U.S. at 396. The Supreme Court has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment." *Mullenix v. Luna*, 577 U.S. 7, 15 (2015).

As to the second *Graham* factor, "whether the suspect poses an immediate threat to the safety of the officers or others," the material fact is that Alejandro was armed.[7] 490 U.S. at 396. Although Officer Crawford had already subdued Alejandro's *vehicle*, Defendants could not have known whether *Alejandro* was likewise subdued. Given this uncertainty and that Alejandro was armed, it was reasonable for Defendants to preemptively use deadly force. *See Mullenix*, 577 U.S. at 17 ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." (quoting *Long v. Slaton*, 508 F.3d 576, 581–82 (2007))); *see also Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

---

[5] Def. Sgt. Brady's Mot. & Br. Dismiss 5–10, ECF No. 17; Def. Brisie Leon's Mot. Dismiss 11–13, ECF No. 21.
[6] Pls.' Original Compl. ¶¶ 16–22, ECF No. 1.
[7] *See* Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 14, ECF No. 25 (admitting "[t]he fact that Alejandro was armed").

As to the third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight," the Fifth Circuit does not literally require that the suspect be actively resisting. 490 U.S. at 396; *see Salazar v. Molina*, 37 F.4th 278, 284 (5th Cir. 2022) (finding the third *Graham* factor was satisfied where the suspect, even though he surrendered before the officer applied force, "had just spent five minutes attempting to evade arrest by flight in a highly dangerous manner" (internal quotation marks and citation omitted)). Revisiting its own opinion in *Lytle v. Bexar County*, the Fifth Circuit in *Salazar* said: "*Lytle* reaffirmed that the relevant 'justification for the use of force' is the officer's reasonable perception of a threat of harm. And this does not always require that a suspect be actively resisting, fleeing, or attacking an officer at the precise moment force is used."[8] 37 F.4th at 283 (internal citation omitted). "Instead, the relevant inquiry is whether the officer used a justifiable level of force in light of the *continuing* threat of harm that a reasonable officer could perceive." *Id.* (emphasis added).

Applying this standard, the Court concludes that it was reasonable for Defendants to perceive a continuing threat of harm and react with deadly force, where Alejandro (1) was armed and could have fired at officers,[9] and (2) had already shown himself to be dangerous and non-compliant, after attempting to break into his family's home with a gun and leading officers on a vehicle chase.[10] Plaintiff argues that Alejandro would have had to make some furtive gesture with his gun to justify Defendants' use of deadly force.[11] But given all the circumstances,

---

[8] Although *Salazar* is factually distinct because it concerns an officer's use of intermediate force (a stun gun), its characterization of the Fifth Circuit's deadly force precedent is relevant here.
[9] This is not the Court's inference, but Defendants' own belief. *See, e.g.*, Def. Brisie Leon's Mot. Dismiss 11, ECF No. 21; Def. Officer Leon's Reply Br. 6, ECF No. 29.
[10] Pls.' Original Compl. ¶¶ 16–22, ECF No. 1.
[11] Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 14–16, 24–27, ECF No. 25.

Defendants were not required to take a "wait-and-see" approach.[12] *See Mullenix*, 577 U.S. at 17; *see also Graham*, 490 U.S. at 396–97.

For the foregoing reasons, Defendants had "probable cause to believe that [Alejandro] pose[d] a threat of serious physical harm," and thus no constitutional violation occurred.[13] *Garner*, 471 U.S. at 11.

### B. Qualified Immunity: Clearly Established Law

Even if Plaintiff could establish a constitutional violation, she cannot successfully allege that the right was clearly established at the time of the violation. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam) (recognizing that it is a plaintiff's burden to "identify a case that put[s] [an officer] on notice that his specific conduct was unlawful").

"[T]he Supreme Court has repeatedly instructed that clearly established law is not to be defined at a high level of generality. This is particularly true in recent years." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021). In *Mullenix*, the Supreme Court emphasized that "[t]he relevant inquiry is whether existing precedent placed the conclusion that [officers] acted unreasonably in these circumstances 'beyond debate.'" 577 U.S. at 13–14 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). There, the Court concluded that "[c]ases decided by the lower courts . . . have not clearly established that deadly force is inappropriate in response to conduct like [the suspect's]." *Id.* at 16. Finding no precedent that "squarely govern[ed]," the Court explained that "qualified immunity protects actions in the hazy border between excessive and acceptable force." *Id.* at 15, 18 (internal quotation marks and citation omitted). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court

---

[12] *Infra* Section B.
[13] For the same reasons, the Court rejects Plaintiff's argument that this is an "obvious" case. *See* Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 27–29, ECF No. 25; Pl.'s Resp. to Def. Brisie Leon's Mot. Dismiss 40–42, ECF No. 27.

has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* at 12 (second alteration in original) (quoting *Saucier*, 533 U.S. at 205).

Plaintiff argues that because Alejandro's vehicle was stationary at the time Defendants fired at him, then cases where officers shot at vehicles "*not* heading in their direction" govern.[14] But those cases are too dissimilar to clearly establish that Defendants' conduct here was illegal. In each of those cases, officers' use of deadly force was unreasonable because the vehicle was receding and the suspect inside the vehicle did not otherwise pose a sufficient threat of harm.[15] *See, e.g., Lytle*, 560 F.3d at 412 ("It is unclear how firing at the back of a fleeing vehicle some distance away was a reasonable method of addressing the threat."); *Edwards v. Oliver*, 31 F.4th 925, 932 (5th Cir. 2022) ("[H]ere, . . . the car was moving away from Officer Gross when [Officer] Oliver fired his shots."); *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("Finally, and most critically, [the district court] found that [the officer] was already behind [the suspect's moving vehicle] when he shot it."). But none involve the factual scenario presented here of an armed and dangerous suspect, whose vehicle has just been forced to a stop in the presence of officers.[16]

The case that Plaintiff chiefly relies on is *Lytle*, in which an officer fired at the rear of a receding vehicle, killing an occupant. 560 F.3d at 408. The Fifth Circuit held that a reasonable

---

[14] Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 18, 20–24, ECF No. 25 (citing *Lytle*, 560 F.3d at 409; *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004); *Edwards v. Oliver*, 31 F.4th 925, 931–32 (5th Cir. 2022); *Ramos v. Taylor*, 646 F. Supp. 3d 807, 819–20 (W.D. Tex. 2022); *Crane v. City of Arlington*, 50 F.4th 453, 467 (5th Cir. 2022)).

[15] The only case that Plaintiff cites involving a stationary vehicle is *Crane*. 50 F.4th at 467. But the decision in *Crane* was issued after this incident occurred, and thus, Defendants would not have been on notice of its propositions.

[16] *Edwards* and *Flores* both involve minors, ages fifteen and sixteen, respectively, who were either fleeing a party where officers were called (*Edwards*, 31 F.4th at 927) or did not hear the officer's cue to stop over loud music in the car (*Flores*, 381 F.3d at 395). Neither case presents evidence that the minor suspect was armed.

9

jury could conclude that this constituted excessive force. *Id.* at 417. Although the fact of the receding vehicle weighed heavily in the Court's analysis, there are no facts in *Lytle* that the suspect was carrying a gun. By contrast, here, Defendants knew that Alejandro, while armed with a gun, had just attempted to break into his family's home and then escaped in his vehicle.[17] So, they had reason to perceive a "continuing threat" of harm even after the vehicle chase ended. *See Salazar*, 37 F.4th at 283 ("[T]he relevant inquiry is whether the officer used a justifiable level of force in light of the continuing threat of harm that a reasonable officer could perceive.").

Plaintiff concedes that Alejandro was armed but argues "the law is clear that just because someone is in possession of a firearm, officers are not justified in shooting them dead without there being some furtive action or gesture causing the officer to reasonably believe the suspect may use the weapon."[18] Plaintiff cites to *Cole v. Carson* and *Baker v. Putnal* for this proposition.[19] *See Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019), *as revised* (Aug. 21, 2019) (concluding that suicidal teenager who pointed gun at his own head "posed no threat to the officers or others to support firing without warning"); *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996) (denying summary judgment because of fact issues over whether the officer ever saw the suspect holding a gun, and, if so, whether the suspect ever pointed the gun at the officer or turned to face the officer).

But those cases are not dispositive here, because they do not involve vehicle chases and their attendant circumstances. When a suspect is armed but has not just engaged officers in a drawn-out vehicle chase, and officers have less reason to know the suspect is a threat, then a suspect's dynamic movements while holding the gun are more relevant. In *Baker*, where an officer was responding to gunshots at Galveston Beach, he was "gestured" towards a "truck

---

[17] Def. Sgt. Brady's Mot. & Br. Dismiss 5, ECF No. 17; Def. Brisie Leon's Mot. Dismiss 1, ECF No. 21.
[18] Pl.'s Resp. to Def. Jeff Brady's Mot. Dismiss 14, ECF No. 25.
[19] *Id.* at 14–16, 24–27.

parked on the beach," which allegedly "contained the shooters." 75 F.3d at 193. The officer fired at an alleged suspect sitting in the vehicle, killing him, but his belief that the suspect posed a deadly threat was questionable at best. *Id.* Similarly, in *Cole*, where officers on foot followed a teenager "with his gun to his head, non-responsive, but without aggressive action," the Fifth Circuit decided it was obvious that officers should have warned the teenager before shooting him. 935 F.3d at 453, 455.

In vehicle-chase cases, however, a suspect's non-compliance—via the vehicle chase—and the rapidly-evolving circumstances necessarily inform an officer's perception that a suspect poses a continuing threat of harm. *See Mullenix*, 577 U.S. at 17 ("'[C]onsidering the unpredictability of [the suspect's] behavior and his fleeing in a marked police cruiser,' the court held, 'we think the police need not have taken that chance and hoped for the best.'" (first alteration in original) (quoting *Long*, 508 F.3d at 583)); *Salazar*, 37 F.4th at 282 ("[W]hen a suspect has put officers and bystanders in harm's way to try to evade capture, it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy."). These cases do not serve to clearly establish the law in Plaintiff's favor, as their propositions sooner support Defendants' perception that Alejandro posed a continuing threat.[20]

Under the Supreme Court's demanding standard, in which "existing precedent [must] place[] the conclusion that [officers] acted unreasonably in these circumstances 'beyond debate,'" the Court concludes that on June 29, 2022, the law was not clearly established that Defendants' conduct was illegal. *Mullenix*, 577 U.S. at 13–14 (quoting *al–Kidd*, 563 U.S. at 741). Therefore, Defendants are entitled to qualified immunity.

---

[20] *Salazar*, however, being an intermediate-force case, does not bear on the reasonableness of the *amount* of force used here.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendants are entitled to qualified immunity. Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss. Plaintiff's claims against Defendants are hereby **DISMISSED with prejudice**.

**SO ORDERED** on this **4th day** of **April, 2025**.

*[Signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**